UNITED STATES (ARMIJO v.). See Case No. 536.

## Case No. 14,466a.

UNITED STATES v. ARMS AND AMMUNITIONS.

UNITED STATES v. ONE THOUSAND SEVEN HUNDRED AND THIRTY-FIVE BOXES AND SEVENTY-SIX KEGS.[1]

District Court, S. D. New York. Sept. Term, 1856.

ADMIRALTY JURISDICTION—FEDERAL COURTS—LIBEL OF FORFEITURE.

[1. The jurisdiction of the federal courts in admiralty includes cases of seizure and forfeiture on tide waters without as well as within the United States nor is that jurisdiction intercepted by the existence of a foreign territorial authority over the place where the seizure was made. No legal exception can be taken by an American citizen to this fact, even if it might be a subject of reclamation by such foreign government.]

[2. In libels of forfeiture in rem, it is sufficient to describe the offense and the method of its commission in the words of the statute creating it. It is not essential to aver the manner or agency by which the property was arrested, unless it be in prize cases.]

BETTS, District Judge. Two libels of information were filed in this court,—the one on the 9th of April, 1856, and the other on the 27th of June, 1856,—against the above articles seized on board the bark Amelia at Port au Prince, on the 25th of September, 1855, and charging that they are forfeited to the United States for having been previously laden and received on board the bark at the port of New York, with intent that the said vessel should be employed in the service of some foreign state to cruise or commit hostilities against the citizens, subjects, or property of some foreign prince or state with which the United States were at peace, contrary to the third section of the act of congress of April 20, 1818. The section is as follows: "Sec. 3. And be it further enacted, that if any person shall, within the limits of the United States, fit out and arm, or attempt to fit out and arm, or procure to be fitted out and armed, or shall knowingly be concerned in the furnishing, fitting out, or arming, of any ship or vessel with intent that such ship or vessel shall be employed in the service of any foreign prince or state, or of any colony, district, or people, to cruise or commit hostilities against the subjects, citizens, or property of any foreign prince or state, or of any colony, district or people, with whom the United States are at peace, or shall issue or deliver a commission within the territory or jurisdiction of the United States, for any ship or vessel, to the intent that she may be employed as aforesaid, every person so offending shall be deemed guilty of a high misdemeanor, and shall be fined not more than ten thousand dollars, and imprisoned not more than three years; and every such ship or vessel, with her tackle, apparel, and furniture, together with

1 [Not previously reported.]

all materials, arms, ammunitions and stores, which may have been procured for the building and equipment thereof, shall be forfeited; one half to the use of the informer, and the other half to the use of the United States." The claimants entered and filed exceptive allegations, amounting in effect to demurrers to the libels. Pleadings attached (Schedules A and B). The specific objections stated in the exceptions are embraced in two propositions: First, that the informations set forth no lawful ground of action or jurisdiction in the case; and, second, that no legal seizure or arrest of the property proceeded against is stated which authorizes its detention and prosecution, and that upon the face of the pleadings the libellants are mere tort feasors and trespassers.

1. The claimants insist that the arms and equipments laden on the vessel are not subject to forfeiture except in connection with the condemnation and forfeiture of the vessel, if she was employed illicitly and in violation of the act of congress. I do not accede to that construction of the statute. It appoints specific punishment for three distinct agencies concerned in committing the offense prohibited: Fine and imprisonment, and also the forfeiture of all materials, arms, ammunition, and stores. This language does not import the necessity of a conjoint condemnation at the same time of all the guilty instruments of the offense. Palpably, the ship's company or the promoters of the culpable enterprise would be subject to fine and imprisonment, without regard to the situation or disposal of the ship herself and her lading. Should the vessel be destroyed in the act of capture, or escape, or is lost after seizure, so as never to become the subject of condemnation to forfeiture, her furniture or lading when arrested would no less be liable to the penalty of the law. The phrase "together with all materials, arms, ammunition and stores" cannot be regarded, in any reasonable construction of the language, to render the forfeiture of those culpable instruments of the offense dependent upon the condemnation of the vessel, which in the act is made no more than a coagent in the commission of the offence. I entertain, therefore, no doubt that the libellants are authorized by the act to demand the confiscation of the munitions of war seized on the vessel, if they were employed in the prohibited service, without showing a previous condemnation of the vessel. This ground of exception is accordingly overruled.

Neither, in my opinion, is the exception to the jurisdiction of this court tenable. The allegation in both libels is that the munitions of war, when seized, were on board the vessel at Port au Prince, on waters navigable from the seas, for vessels of the burthen of ten tons and upwards within the ebb and flow of the tide, and within the admiralty and maritime jurisdiction of the United States. The libels further aver that the ves-

sel had been previously illegally fitted out and loaded with the munitions of war at New York, within the jurisdiction of the United States and of this court, with intent to be employed in violation of the act of congress. I cannot regard it an open question at this day, in this court, whether it has cognizance of civil actions of admiralty and maritime jurisdiction, including cases of seizure and forfeiture, on tide waters within and without the territorial limits of the United States. That jurisdiction may be peaceably exercised anywhere upon the high seas, and, for most purposes, the ebb and flow of the tide determine the extent of that locality. 3 Story, Const. Law, par. 1663, and the cases cited. This jurisdiction is applied to cases of forfeiture under revenue laws and other prohibitory or penal statutes of the United States. U. S. v. La Vengeance, 3 Dall. [3 U. S.] 297; U. S. v. The Betsy & Charlotte, 4 Cranch [8 U. S.] 443; U. S. v. Whalen, 7 Cranch [11 U. S.] 112. Criminal offenses committed on the high seas are equally within that jurisdiction (U. S. v. Bevan, 3 Wheat. [16 U. S.] 336; 1 Kent, Comm. 6 to end, 360); and the description includes entrances, road-stands, bays, harbors, ports (3 Story, Const. Law, par. 1167; 1 Curt. Comm. 45, 50). The jurisdiction of the United States courts is not intercepted by the existence of a foreign territorial authority over the place where a seizure or arrest is made. It is explicitly declared by the supreme court that an American vessel may be seized within the territory of a foreign power for a violation of the laws of the United States. The jurisdiction of the national court over her when she is brought within its cognizance is perfect, although the arrest is certainly an offense against that foreign power. U. S. v. The Richardson, 9 Cranch [13 U. S.] 102–104. No legal exception to the act can be taken by the American citizen, and, if it be a wrong or even a subject of reclamation, it is so only between the government of the United States and the one whose territorial sovereignty has been violated. The averment in the libels makes in this vessel a legal and proper case of jurisdiction in the court over the cause of action, and the exceptive allegation is disallowed.

2. The informations, in my judgment, are sufficiently exact and specific in point of form. In the federal courts, in an indictment even, it is enough to describe the offense and the method of its commission in the words of the statute creating it. U. S. v. O'Sullivan [Case No. 15,974], where the cases are collected and considered. This is especially so in respect to libels in rem for forfeitures. The Mary Ann, 8 Wheat. [21 U. S.] 380; The Samuel, 1 Wheat. [14 U. S.] 9; The Palmyra, 12 Wheat. [25 U. S.] 1. It is not the usage in pleading, nor is it any way an essential part of the libel, to aver the manner or agency by which property pro-

ceeded against for forfeiture is arrested. unless it be in cases of prize. The fact does not ordinarily enter into the question of jurisdiction over the subject matter or that part of the court; and, when it does, a general allegation of seizure or arrest is all that need be stated in the pleading, the mere name in which it was made being matter of proof. The averment in this instance that the property was seized within the maritime jurisdiction of the United States is broad enough to admit all necessary proof of the competency of the officer or agent who performed the act to make the arrest, and that it is made in due form of law. The court will rule instead that the seizure was made by violence, and against the resistance or objection of the foreign power within whose waters the vessel and her lading were found; and the mere fact that they were within the territorial limits of another government, if on the high seas, does not abrogate and render void the proceeding, so as to constitute the act a trespass and tort by this government in respect to its own citizens, whose property was so arrested.

The decisions, therefore, in my judgment, are untenable on all points set up by them, and a decree must be entered in favor of the libellants for the forfeiture of the property so seized, with leave, however, to the claimants to answer and plead over to the merits on payment of costs.